Case number 20-5288. John R. Adams, the Honorable Appellant versus Judicial Council of the Sixth Circuit and Committee on Judicial Conduct and Disability of the Judicial Conference of the United States. Mr. Orfinides for the Appellant. Mr. Sauter for the Appellate. Good morning, counsel. Before we begin today, I just want to note that today is Judge Jackson's first argument sitting as a new member of this court. And on behalf of the court, I want to extend to her a very warm welcome as she joins us in pursuit of our common calling. Thank you very much. I'm honored to be here. Mr. Orfinides, please proceed when you're ready. Yes, thank you very much. Paul Orfinides on behalf of Judge John R. Adams. First of all, I would like to thank the court for its time and efforts on Judge Adams' behalf. He has sat by designation as a member of the Sixth Circuit, so he knows what goes into an appeal. And I know he appreciates your efforts very much. I'd like to begin by talking about the misconduct finding, because I think that most clearly demonstrates that this case is not moot. There are two very much interrelated components of what we are claiming is direct government action that injured Judge Adams and makes the case not moot. The misconduct finding, it's the misconduct finding that he committed conduct prejudicial to the expeditious administration of the courts. In our view, the McBride case addresses that. That is exactly the reason why the court in McBride found that case, that Judge McBride's case was not moot, because there was a determination that he too had committed conduct prejudicial to the effective and expeditious administration of the business of the courts. So this really is no different. In fact, we think this is probably more egregious, because the misconduct finding here, as interrelated with the psychiatric examination order, went to the core of Judge Adams' ability to serve, his mental competence. He's been on the bench for 18 years, the only judge in the 232-year history of the judiciary to have been found guilty of misconduct, for declining, for objecting in good faith to undergoing the psychiatric examination. Only the second judge to our knowledge who has ever been publicly ordered to undergo such an examination. Can I ask you a question about the misconduct part of it and how you're conceptualizing the relationship between what you're terming the possible, one arguable distinction between this case and McBride, is that in this case, the misconduct is a direct byproduct of the examination, because the misconduct is declining to show up for the, to submit to the examination. Whereas in McBride, you didn't have that kind of relationship between the two aspects of it, the two-in-one-year time periods and the misconduct. And so one, I just want to get your reaction to that potential distinction between the two and why you think that doesn't mean that this case could turn out differently on the misconduct part of it, given that here, if we assume, and I know you'd reject this assumption, but let's just assume it for purposes of argument, that the examination part of it was rendered moot by the counsel's determination that that requirement would longer be in effect. And then you have a misconduct, which you're arguing is distinct, but the misconduct is entirely bound up with as a byproduct of the examination part of it, that's now no longer in effect. I think really there's three steps. First, there was the demand by the special committee that he undergo the psychiatric examination. And when he did not, that was when, when he objected, that was when, that was what ended up with the misconduct finding. Now one can almost look as, as a remedy or as a sanction for the misconduct finding, he was then ordered by the judicial counsel, affirmed by the review committee to undergo the psychiatric examination. So there are three components of it, but you know, I don't see that as any different between the misconduct finding in McBride and the sanction in McBride, which was the suspensions, the suspensions there had obviously lapsed, but there wasn't the same interconnectedness between the, the misconduct finding and for lack of a better word, the penalty in McBride. You know, I think all of these, all of the court's cases that deal with direct government action, this is probably the most, I would say this is the most egregious, the most harmful to a judge's reputation. I mean, we have the, I think the first case was probably Sullivan. That was the attorney that the district court, the, this, this, this district court's bar committee had determined committed misconduct. Counsel, can I just ask you about that assertion that this is so harmful to the reputation? I mean, isn't this just a recognition that judge Adams refused to submit to the examination? What, what reputational harm is there when he misconduct? I mean, it was not just a, an acknowledgement that he didn't, that he declined to go. They found he committed misconduct, prejudicially effective at an expeditious administration, the business of the courts. I mean, that's a chief, but chief, I guess I didn't really understand your answer to chief judge Srinivasan's question about the fact that that finding misconduct concerned the examination order, which they now say he no longer has to do. So why isn't their withdrawal of the examination order sufficient to terminate any reputational harm that flowed from his refusal to do it? Because just like in McBride, judge Adams was found to have committed misconduct. I mean, there's, there has been no revocation, no withdrawal of the misconduct finding. So, I mean, I think of it as misconduct and sanction in both McBride and Adams in, in judge McBride's case, the sanction was suspensions. Though, when those expired, the court said that component of the challenge of judge McBride's legal challenge is moot, but because he was found to have committed misconduct, that makes the case not moot. So conceptually, we're, we're splitting the two up between the misconduct finding and then this, the, the examination order, the misconduct finding exists. It's still out there on the court's websites. You know, it's, it's documented. Again, in response to sort of chief judge Srinivasan's framing of this, you're suggesting that it, it doesn't matter that in McBride, the suspension and the misconduct were two separate, they stemmed from two separate sets of facts. So a parallel scenario would be the McBride person is suspended and then he refuses to comply with the, the, the conditions of that suspension. And so they find him to be in contempt or that he's committed misconduct. That seems to me to be more parallel to what we have here. And therefore they're intertwined in a way that really wasn't the case in McBride. And you say it doesn't matter. I say it doesn't matter. And I would, I would say, I would look to the Sullivan case. This was the attorney to the attorney misconduct place where the district court's bar found an attorney had committed misconduct. He appealed that the bar committee then said, well, there's no injury because he wasn't, there was no sanction. This court said he's still that he's still suffered an injury because he was found to have committed misconduct. You know, some of the other cases that we've cited Fortich, for example, I think I would, I think it seems very persuasive to say that finding a misconduct that's untethered to something else causes an injury. That seems right. I guess what seems a little more complicated about this case is the finding of misconduct is tethered to something that by hypothesis has been ended. That is no longer in effect. And that wasn't true in Sullivan. And it wasn't true in McBride. I'm not necessarily saying that that's a distinction with a difference, but it seems to me that it's at least a distinction that needs to be examined because the underlying matter that gave rise to that you haven't abandoned the examination part of it either. And so in some sense, you know, you're saying that that remains an issue too. But that suggests that they stand or fall together. And I guess the question is, if we disagree with you on the examination part and think the examination part falls, then does the notion that they stand or fall together mean that the misconduct part of it falls too? Or is there a way to disaggregate them for these purposes, even though the misconduct finding was entirely predicated on the examination requirement because the misconduct was the failure to abide by the examination requirement? Well, I think this gets back to the, we see three steps, right? The original requirement to undergo the examination order, the objection that was found to be misconduct, the objection. And then there was the examination order. Now the examination order has been withdrawn. Well, actually, it hasn't been withdrawn. It was said was no longer in effect. Right. What that means is anyone's guess. But the misconduct finding was never withdrawn. We still have a judge who, you know, 18 years on the bench, you know, a well-respected member of the federal judiciary who has been found to have committed misconduct. And that is very harmful to his reputation. And I think I don't see how the fact that the penalty, I don't see how the penalty can be separated or for purposes of McBride can't not be separated from the underlying misconduct finding. I mean, that was exactly the case in McBride. The court found the misconduct finding was existent. It was still out there. It was still injurious to his reputation. I think the court actually looked at it from the other perspective saying, well, you know, what could we do to remedy the suspensions that would be different from remedying the misconduct order? And, you know, I think it said that it was just an incremental injury. The underlying injury was still the misconduct finding. And that's the case here. What we're it makes this case not moot is the underlying injury of the misconduct finding that harms his reputation. Can I just ask, I know the time is elapsed, but is there any way to challenge the misconduct finding without litigating the legality of the examination order? Is that if you continue, is that what the rest of this case looks like? The rest of this case looks like constitutional and statutory challenges to the authority of the judicial council to order a psychiatric examination. So I don't, I don't know. I mean, that that's what, that's what those were the claims that we had sought to bring. They were, they were four counts in our proposed amended complaint. All right. What was your, your evidence of a tangible harm to reputation? Well, two responses. First of all, our reading of the law, the court separates two into two types of injury. One is injury from direct governmental action. The other is injury from secondary effects. Direct governmental action does not require anything more. That's that in our instance, that's the misconduct finding. Secondary effects require some sort of concrete tangible effects. In this instance, we have actually had instances, Judge Adams was subject to a judicial complaint by one of the parties that appeared before him that challenged his competence, his, his, his fitness to serve. I mean, that's exactly the type of reputational injury. I mean, it's concrete, it's real, it was filed. You know, we can trace that back to the misconduct finding. Well, absolutely. I mean, this is the misconduct finding was the, is based on his good faith objection to undergoing the psychiatric examination. Right. So that is not the basis from which people objected to his, his sitting, is it that he failed to respond to this request for an evaluation? Again, I think in this particular case, unlike in McBride, the two, the two components are so intertwined that it's difficult to separate them out. I don't think that makes the misconduct finding not moot, but I do think it demonstrates that something like the, the judicial complaint was, is a concrete tangible secondary effect. If, if the court needs to even get to that secondary effect analysis, we don't think it needs to because we think there's direct government action that has caused the injury. Can I just get one point of clarification, following up on the question that judge Jackson just asked you. So they're, they're intertwined as you are suggesting. And is there any argument that you're making in challenging the misconduct finding that's different from an argument that you make the challenges, the examination requirement? In other words, is there any basis on which the, if this were to go forward, a court could conclude that you win in challenging the misconduct determination, but the necessary result of that is not that you would also win in challenging the examination requirement or are the challenges to those two kind of intertwined in the way that you think? Again, I, I think they're intertwined, your honor. I don't, I mean, it's just because of the nature of the examination order that, and the misconduct finding that it makes it so different from McBride that I'm, I don't know how you could separate them out. Okay. Which I think bears on why neither of them is moved as opposed to why both of them are moved. Right. So you would not be making any different argument with respect to one or the other. You mean an underlying argument as to why one was legal or one was not legal? Well, whatever your challenge is, yes. Was there any distinct challenge to, to the one that does not apply to the other? I think the the review committee acknowledged that to order someone to undergo a psychiatric, a federal judge to undergo a psychiatric examination was a question of first impression. You know, and to find that that constituted misconduct I mean, to me, I almost compare it to a, you know, was this a good faith objection sort of analysis so that we could make that, that sort of argument about the misconduct finding that you wouldn't make about the psychiatric, the actual order to undergo the psychiatric examination. But is that something, is that an argument that you've been making? Is that in the complaint? Um, I think it is. I believe it is. Okay. But you're not, you can't point to a particular part right now offhand. I mean, you can, you can look at it for purpose of rebuttal. That's fine. Yeah, I don't, I don't know. I mean, I, I'll look at it for purposes of rebuttal. Okay, that's fine. Let me make sure my colleagues don't have additional questions for you at this time. Okay. Thank you, Mr. Orfanidis. We'll hear from Mr. Soter. Thank you very much, Your Honor. May it please the court, Kevin Soter from the Department of Justice for the Judicial Council and the Review Committee. I'd like to focus today on why this case is very different from any of the cases in which a claim of reputational harm has saved the case from mootness. As the recent colloquy was pointing out, there is no meaningful difference here between the challenge to what the plaintiff tries to pull out as the misconduct finding and the challenge to this very clearly moot examination order that is no longer in effect, hasn't been in effect for more than two years now, and does not require any future action or have any reasonable expectation of future action from the plaintiff. And there has never been any case in which a court has allowed an action to proceed where the request would be for a declaratory judgment opining directly on the merits of a plainly moot issue based solely on an allegation of reputational harm. There are a few features... The reputational harm, you're not saying that the reputational harm isn't real, are you? Because it does seem like a real thing for a judge to be found to have committed misconduct. Correct, Your Honor. We're not at all saying that the article three for several reasons. One of which is that... Before you go on, you just also said there's no case that's similar. Is that because you're reading Fortich to be concerning only bill of attainder as opposed to declaratory judgment? Are you making some sort of remedy distinction? I don't think that's the most important distinction from Fortich, Your Honor. I think the overall theme of these cases is that context matters a huge amount, and the context for the challenge in this case includes something that's just absent from any other case with a live injury, which is the withdrawal of the order that allegedly causes the reputational injury. The claim of reputational harm here is a cloud over the judge's fitness to serve in office that came from that underlying examination order that he's arguing is inextricably intertwined with this misconduct finding. And any reputational harm that flows from that was meaningfully vitiated when the Judicial Council publicly announced in 2018 and 2019, and its orders on those issues are at JA 104 and 106, that the examination order was no longer necessary going forward based on factual changes. That makes it sound like that there's no way in which the judge would be better off if there were a subsequent statement that says like, look, we've already decided that the examination requirement is no longer in effect, and because it's no longer in effect, there's no misconduct based on something that's no longer in effect. So that's not any longer on the books either. So of course there are ways in which any injury that had been originally lingering might have been vitiated further, but our point is that there's just not enough left at this point to this case to overcome the rule that the lingering effect of an otherwise moot action doesn't save a case from mootness. So you think there is, your argument is not that it was necessarily the case that when the examination requirement was deemed to be no longer in effect that the spillover harm from the misconduct just disappeared. Your argument is that there may still be some spillover harm from the misconduct, it's just not enough. I think, yes, all we need, of course, is that there is not enough to support Article III jurisdiction. The point is, of course, there can be challenges in drawing this line, and I think this court's cases illustrate that some cases will fall on one side of the line and some will fall on the other, and the reason is that in the course of issuing orders, making decisions, governments and private parties all the time are going to make findings, they're going to make an order or a decision, and those descriptions and those things that could just be couched as factual findings can't form the basis for an independent challenge once the decision or the order that's made is later withdrawn and mooted. Can I ask you this hypothetical? So suppose that what happened is there's an examination requirement that's imposed and the judge declines to abide by it, and then what the counsel says is we've imposed an examination requirement that we think is on perfectly sound footing. The judge has declined to comply with it. It's not necessarily enough to deem him to have engaged in misconduct that he declined to comply with it, but we think that his declining to comply with it was in especially bad faith given the significance of the inquiry that we're undertaking, and because of that, we're finding that he engaged in misconduct by declining to abide by the examination requirement, and then later on, the same thing happens here. The examination requirement is eliminated going forward. Would you still say that the misconduct determination is necessarily an adjunct to the examination requirement that's now moot, and therefore, that goes away, too, even though here the rationale would have been not every failure to abide by an examination requirement results in misconduct, but this one does because of the nature of the proceeding. I think that probably still wouldn't cross the there are reasons why you could think maybe that comes a little bit closer to the to the line in this case, but the important features would remain similar, which is that there is still something later that vitiates the reputational effect from the challenged order. There is still another feature of this is that the claim of reputational harm has to be traceable to the specific order that's actually being challenged, and here there were these proceedings that were ongoing about misconduct related to behavior toward a magistrate judge, a reprimand for that, none of which are challenged in this case, and all of which will remain a matter of public record regardless of success in this case. Let me ask you then, are you essentially arguing now that this case is covered by the incremental harm analysis in McBride? I believe it's covered by several pieces of McBride at once. Of course, the most direct application is to compare it to the expired sanctions that didn't save that case, and it's important to remember the challenges in McBride were two specific sanctions that were imposed against the judge. Each of those would have been tied in some way to something like a set of findings, like the 159-page report that was found to be stigmatizing enough to confer ongoing jurisdiction for the reprimand, which is a specific sanction available under the act, but unlike Judge McBride, Judge Adams was not issued a specific sanction for refusing to comply with the evaluation. These were ongoing proceedings. There was an ongoing investigation into whether a mental health disability was present. You seem to be resisting the conclusion that we have more than just a statement that he didn't comply with the examination order. We have a separate finding by the counsel that not doing that constitutes professional misconduct. It's not just the report says he didn't do it, and then we go on to say, we're ordering him to do an examination. In that circumstance, I understand there are lots of findings that lead up to what you seem to think is the main show, which is the examination order, but along the way here, they also made a separate seemingly inherently stigmatizing finding about what it meant that he didn't comply with the examination order, and I don't give him a basis when they don't retract that in addition to the examination order, why that isn't enough in light of McBride and Fortage and Sullivan and other cases in which we have considered that to be sufficient. So two responses to that. One on the facts of this and how that misconduct finding fits in. In the context of this ongoing investigation, when you look at the misconduct finding was made, if you look a couple of pages past that, I think it's at the very end of the judicial counsel's report, on page JA-60, you can see that it was being considered misconduct in order to support possible future actions. There was no sanction connected to this misconduct finding, like the sanction of publicly reprimanding the judge for the behavior toward the magistrate judge. And similarly, if you look at what the review committee said at the end of its order, I think this is at JA, I believe it's JA-99, they're also talking about possible future actions for the misconduct that had been found. So this is very unlike the public reprimand in McBride that could be challenged on its own and much more like something that has, we're talking about the order that's expired and a potential challenge to that. I'm sorry, why is that just Sullivan? Isn't Sullivan the one where the attorney was found to have committed misconduct of some sort, but they didn't impose a sanction? So fine, they didn't impose a sanction. Isn't that exactly what happened in that case? In that case, though, the finding was reached at the culmination of the proceedings. There was no ongoing investigation. There was a determination that the attorney had appeal. And there wasn't this later, anything later that happened that vitiated any reputational harm that flowed from that. I see my time has expired. May I continue to answer? Yeah. So I think I also mentioned there was the legal point also in reconciling these cases. The important thing to keep in mind is context matters a huge amount in how these cases come out. And the cases that stand for the proposition that you actually have to prove up your claim of reputational harm perhaps best illustrated by this court's decision in Gould, in which the former detainees from Guantanamo claimed that their label of being enemy combatants continued to cause ongoing stigma, ongoing harm, and this court readily dispensed with the argument that stigma alone could be enough. But isn't Gould really more about sort of the habeas analysis and collateral consequences seem to be a little bit of an outlier given the other kinds of reputational harm cases that we're talking about here? I don't think it's an outlier at all. It relies on core principles of article three jurisdiction. It relies on Spencer versus Kemner, which went through a detailed analysis of why presuming collateral consequences from anything, including potentially a criminal conviction as discussed in footnote eight of Spencer, isn't enough to confer ongoing jurisdiction. And I'd like to emphasize that when pressed... Wasn't it terribly relevant that the complainant was no longer subject to the U.S. jurisdiction? I didn't read that to be a dispositive piece of the court's analysis. I read the analysis to be discussing that the case had become moot by the release from custody, just like this case has become moot by the ending of the examination order. And when there's the lingering effect of an otherwise moot action, the case doesn't survive. That rule was also applied in this court's case Anderson from 2015. Just all of these numerous cases in which that rule controls, including of course the moot portion of McBride, where we're talking about you have these different sanctions, all of which would have been premised on some findings, but the ones that had expired were moot. But can I ask you, can I ask you, it seems to me to matter and maybe it doesn't. This is where you come in to tell me I'm wrong. It seems to me to matter that in Anderson and potentially Gould, we're not talking about a public document that's on a website labeling these people as incapable of writing, as a journalist incapable of writing with military combat people or Gould, he may have been labeled an enemy combatant, but who really knew that? Our current situation is a misconduct finding that even if it's a part of an investigation, even if it's in progress, it is publicly available on the court's website. And therefore, isn't it distinct from the kinds of acts that we say were mooted by the release of prisoner or by the change in the fundamental nature of the embed program? I don't think it's distinct for those reasons. I don't think there was any suggestion in those cases that the claim of reputational harm failed for not being publicly disseminated widely enough. But even moving past that and looking at, for example, the moot portion of McBride, I think the takeaway from McBride is if Judge McBride had only challenged his one-year suspension from being allowed to sit on any cases, his challenge would have been completely moot. There would have been no basis to reach any of his challenges. And that's why footnote five of the opinion doesn't reach the merits of his claim that that's unconstitutional. And so, but similarly, if he had been sanctioned in that way, the sanction would have had to be supported by findings that under the statute would presumptively have to be public. That's the statute currently at 28 U.S.C. 360B says that when you have one of these sanctions, including a suspension from cases like was done in McBride, you have to explain the basis for that and make that publicly available absence good cause otherwise. So on the facts on McBride, for example, you've got the one-year period where the judge was not supposed to take on new cases. Suppose that what happens is then the judge decides to undertake some actions that attempt to take on new cases. And I sent out some emails to the clerk's office and says, you know, I know there's an order in effect, but that don't pay any attention to that. I'm in the courtroom. I'm ready to hear cases. Please start assigning me cases. And then that becomes known. And then there's a misconduct determination based on the idea that the judge is undertaking actions in breach of the requirement that the prohibition against taking on new cases. If the prohibition goes away, your argument would say that the misconduct, the actions that were undertaken in an effort to circumvent the imposition of the order that you not take on any new cases also goes away? That does sound relatively analogous. I would say that, you know, the context for these things always matters. So if there is nothing in the later proceedings that could be seen to vitiate the effect of the misconduct finding, you might draw a distinction based on the difference between the mere expiration of a sanction and the, sorry, the mere expiration of, I guess it would be the sanction in that case, and the withdrawal of one, which is a point that I think this court's decision in Penthouse illustrates well, that in that case, the government letters that were the claimed source of reputational injury were affirmatively withdrawn. And I think that's a better analog to what happened here than mere expiration of a sanction that has a time limit on it. When the Judicial Council publicly announced that there was no longer an ongoing concern that required an evaluation to take place. Okay, can I ask one last, oh, go ahead, go ahead. I don't understand why that distinction matters from the standpoint of mootness when you're talking about the ability of the person to challenge that separate finding. Why does it matter whether the event is a withdrawal or an expiration of the sanction? I think it goes largely to redressability, Your Honor. What we're talking about here at the end of the day is a declaratory judgment that would require opining on the merits of this moot issue. And the question is whether there would be any meaningful redress that could be provided by declaring that the misconduct finding and unnecessarily intertwined evaluation order were unlawfully issued. And when you have a situation where an order has already been withdrawn, the point that's made in Penthouse and that's quoted in Fortich is you can ask what more is there to gain by the order that's being sought. And when you look at that incremental effect of the order, particularly given the background here of the many things that will not be changed that could affect the judge's reputation, there just isn't enough left to this case. And I think another point that illustrates that well is when you consider the specific consequences that the plaintiff attempts to point to. And you look at, for example, the speculation about what's motivating the behavior of Sixth Circuit judges who are sitting on appeals and considering whether they meet the standards to remand to different district court judges. That level of speculation has just never supported a claim of ongoing harm sufficient to save a case from mootness. But it seems like, if I could just encapsulate your argument, several times you refer to vitiating the effect, which to me sounds like the effect is gone. But then other times you've talked about lingering effect, which to me makes it seem like there's still a lingering effect. And so the way that you could bring those together is to say, even if there is an incremental effect from the continued existence of the misconduct language, that's just not legally cognizable. But that's different from saying it actually vitiated the effect, because what could you possibly be complaining about? Because the thing that the judge was alleged to have infringed is no longer in effect anyway. So as a practical matter, there's nothing to be complaining about. Those seem to me to be different. I view those as similar, but I think that the only conclusion the court needs to reach is that there is no longer enough effect so that meaningful redress could be available through the specific relief that's been requested, which is a declaratory judgment opining on the legality of the examination order. As the earlier colloquy was canvassing, there isn't anything that I can find, and certainly no argument I've seen made, that there is a distinction between a challenge to the misconduct finding and a challenge to the examination order. When you look at the counts of the proposed amended complaint at JA 124 to 126, nothing there about some sort of distinct legal claim that could be based on one without being based on the other. And at the end of the day- How is it then that Judge Adams gets to litigate his concern that what happened here was that he was being charged with contempt under circumstances in which he shouldn't have been? And I know that that means we have to assess the extent to which the original order was valid. That's always been his claim. It wasn't. But that's just because he says, I'm not in contempt because the original order was invalid, which he distinguishes in some sense from a full litigating order, which you can't do anymore because that's moot. You've now said the two are combined. He admits there's no daylight in terms of the actual litigating position, but there's still this concern that he wants to be able to litigate the contempt order. And I don't hear you giving him any opportunity to do that. He can only do that while the underlying thing is live. Is that what you're saying? That sounds like an encapsulation of it. Yes, of course, just wanting to litigate something is not enough reason to get you into federal court. Psychic injury isn't enough. And as Steelco points out, every plaintiff who files a suit would desire a ruling on it, but that doesn't mean that there is enough for Article III jurisdiction. And here, there just isn't enough left to this case. And that's why the case is about lingering effects of an otherwise moot action control. It's like the lingering effects that were at issue in the moot portions of McBride, and it's like the lingering effects that were left in this court's other cases. We're left with a case where there was this challenge to an examination order that remains the focus of the challenge, but all we're left with is the tail trying to wag the dog of this case. So I want to ask a question that addressed to Mr. Orphanides when he comes back, but to you right now. If the case were to go to expect Judge Adams to present, what's the best he could present that would still be insufficient in your view for meaningful redress? So I'd like to clarify, this case should not go to trial. There were threshold issues that were raised aside from mootness that have not been resolved by the district court. But the only request I'm seeing in the proposed amended complaint, which was the specific proposal that was made to try to get around the mootness of this case, is for a declaratory judgment. And of course, the court would have ample discretion for the reasons that we just discussed at the end of our brief to deny that form of relief at the end of the day, even in the very unlikely event that this case were to survive the viable threshold defenses and were to prevail on the merits. Well, okay, the request would be for a declaratory judgment, but what would you say to the trial judge, the plaintiff has to show and cannot show in your view? On the merits of that, we would say that the plaintiff has to show that the four challenges in his proposed amended complaint survive these threshold challenges and are correct interpretations of the law on the merits, which would include, so his claims are facial challenges under void for vagueness doctrine. And he also has an ultra various challenge to the examination order and an as applied due process challenge to the process in which the proceedings. At some point, we get through that conceivably, conceivably, to what facts would he have to, what facts would he have to prove up, which he cannot do in your view? Um, so I think that's, it's a, as far as the fact, I think, I mean, the, the only challenges that would even potentially get to the merits are these spatial constitutional challenges for which I'm not sure the facts would matter very much. He'd be talking about does the language of the statute give enough notice that the steps that were taken in this investigation were appropriate. And the reason why that on a 12 B six basis, uh, is that this, uh, he's not talking about anything that governs conduct that to which the void for vagueness doctrine even applies. And even if it did, the statute is not vague. I'm sorry to keep going on so long, chief, but, um, can I ask you about why it is that the council didn't just also rescind this aspect of their investigation? They got rid of the examination order, but it seems very almost calculated in a way to remain, uh, standing behind and to leave in place this finding that he was held in contempt. And in my own mind, as I went through everything, I wondered whether that standing alone was sort of doing work, um, the standpoint of the council that we want people to know that when we order them to do things, they have to do it. And if not, we're going to hold them in professional misconduct or say that that's the case and it's going to be on the website so that even now, though we say judge Adams doesn't have to do this examination anymore, there's still a benefit to us as the council for a clerical error that they meant to get rid of the whole thing and they left that in. So I can't speculate about what was motivating them. I don't think there's anything in the record about that. Um, but I also don't believe that there's anything reflecting that judge Adams ever asked for this misconduct finding to be scrubbed from the books in some way. Uh, that's a request that he made in this litigation, um, after the only order with any operative effect was declared to no longer be in effect. Um, so I think that all just what, what we, what we're left with at this point in the case is we have this misconduct finding that, uh, the plaintiff is trying to home in on to say it saves the case, but it's just not enough. Uh, and it's, it was this interim step as part of these ongoing proceedings about possible future actions, including potential future concrete sanctions, like the concrete sanction of a reprimand that was at issue in McBride or the concrete sanction of case removals, if the misconduct were to continue. Uh, but at the time there was just a specific finding that misconduct had occurred up to that point in the investigation to support potential future actions in the ongoing investigation that never came to pass. Of course, it'd be really easy to end the case by everybody's estimation if in response to the, I take your point that the issue may not have surfaced until the litigation was filed. I understand that point, but it would also be very easy to resolve the case if once the of what's at stake, then the council just issues a subsequent ruling that just says, Oh, now I see what's going on. By the way, we're going to rescind the misconduct portion of that too, just to end any debate about it. And then the case would be over by everybody's estimation that could happen, I suppose. So I agree. I think our, our, our point that that would certainly make the mootness analysis even easier, but our point is that what happened is is similar to that and all in, in enough relevant respects to cross the threshold from jurisdiction to no jurisdiction. Got it. Thank you. I'll make sure my colleagues don't have further questions for you. And then thank you, Mr. Sutter, Mr. Orfanides, we'll give you two minutes for rebuttal. Thank you, Your Honor. From Judge Adam's perspective, and, and this, this arose at, we'll call it the administrative level back when it was in, still in front of the, the special committee and the judicial council, we did challenge the authority to find him in misconduct for objecting in good faith to what was a question of first impression. So this is not something new and for purposes of the litigation, this has been an issue all along. I was asked about, you know, where in the complaint is this, is there this distinction? And I really think it's, it's, it's structural. We have three counts that really challenged the authority of a judicial council, a special committee to conduct a, to order a psychiatric examination, and then we have the due process challenge. And that's, I think that goes more towards the examination order and the underlying reasons for the examination order. But there, I mean, so it's, so it's, it's a bit structurally in the complaint, but, you know, they still are, they're, they're distinct issues and yet they're interrelated issues. And I don't know how else to explain it other than the fact that there is a misconduct finding out there that has not gone away. We've objected to it, to, we objected when they were contemplating holding him in misconduct for objecting in good faith and we've, and we're now litigating it. You know, I don't, counsel said there needs to be a line. Well, you know, Sullivan, there was no misc, there was no sanction at all. So the line clearly is, is there a misconduct finding? Traceability, you know, the Fornage case, I think anybody who was in DC in the, I don't know if it was the eighties or the nineties, but remembers, you know, all of the publicity about that case and, you know, Congress piled on and yet the court found it, it could provide meaningful relief to Dr. Fornage if that finding was declared unlawful. Well, just as you, as you just said, though, had been maligned and it was a subject of extensive press conference, a press coverage. I can see that, but here it's a very, quite a situation, much more inside baseball. So just bear with me and assume that you can get through all of the threshold issues raised by the government. Are there any facts you're going to proffer? Oh, I think if we were to go to trial, we would show the press coverage of the issue and the negative press coverage that Judge Adams got while this was underway, when he was found to have committed misconduct and subject to the examination order. He would have to have some contemporary consequence to prove up, not something that was published simply because it was published five years ago. Well, that certainly is analogous to the Fornage case where there was publicity as well. But the question is, is meaningful relief, is meaningful relief available by finding that there was no authority to order him to find him in misconduct, to find he had committed misconduct by objecting in good faith. Can I ask you another version of the sort of incremental harm question, which is, my understanding was that Judge Adams did not challenge the misconduct finding that arose from his having issued the order to show cause in the first place, that was a finding, I thought about that, that wasn't challenged. So there's already in the record and in the public view and in newspapers, presumably, some press coverage of his having done that to begin with the issuing the order and having been found to be in misconduct, giving rise to the need for an examination order. So how much more reputational harm is there from this essentially second misconduct filing that arises from his refusal to submit to the examination order? He absolutely challenged it before the Judicial Council and the Review Committee. We chose not to challenge it in the litigation. But at the same time, I don't see how that's any from the misconduct findings in McBride or in Sullivan or in Fortich. You know, there was negative publicity about the underlying, you know, each of those underlying you know, cases, but still the court found that they could find, they could afford meaningful relief, even if it's just a small narrow component of it, that that was sufficient to keep the case from being moved. So, and we don't see that any different here. I mean, if this court were to find, if the court were ultimately defined that it was, there was no authority to order Judge McBride to undergo a psychiatric examination such that he could not, his objection to undergoing that was not in bad faith, not misconduct, that would provide meaningful relief. The court would be saying that he did not, you know, commit conduct prejudicial to the expeditious and effective administration of the business of the courts. That would be meaningful relief to Judge Adams. And I think that's supported by McBride, Sullivan, Fortich. Okay. Thank you, counsel. Let me make sure my colleagues don't have additional questions for you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Jackson, Ginsburg